176

32 C.C.P.A. (Patents)

### Application of TRIER et al.

### Patent Appeal No. 4965.

Court of Customs and Patent Appeals.

March 6, 1945.

Rehearing Denied April 9, 1945.

Norman E. H. Deletzke, of Chicago, Ill., for appellants.

W. W. Cochran, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

This appeal brings before us for review decisions of the Board of Appeals of the United States Patent Office, affirming decisions of the examiner rejecting twelve claims (apparently all the claims) of appellants' application for patent relating to a bottle washer discharge apparatus. The claims are numbered 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12 and 13.

Claims 1, 10, and 12 reads as follows:

"1. In a bottle washing machine, the combination with a bottle conveyor provided with a bottle receiving support, of a bottle receiver adjacent said conveyor and at an angle to the direction of advance thereof, and an ejector having a portion engageable with only one side of the mouth of a bottle in a bottle support in the conveyor to thereby eject said bottle from said support while simultaneously tilting said bottle toward the position of said receiver, said simultaneous tilting being caused at least in part by the contact of said ejector with said bottle on one side of the mouth of said bottle."

"10. In a bottle washing machine including an intermittently movable conveyor provided with hollow sockets for the reception of inverted bottles, a bottle delivering mechanism comprising a delivery conveyor, a plurality of plungers having their ends cut away at one side for projecting bottles from said sockets and causing the same to tilt in one direction, and a transfer mechanism for receiving the ejected bottles and depositing the same right side up upon said delivery conveyor."

"12. In a bottle washing machine including an intermittently movable conveyor provided with bottle carrying flights having hollow sockets for the reception of inverted bottles, a bottle delivering mechanism extending transversely across the conveyor, means for ejecting bottles from the sockets, means for receiving the ejected bottles and for depositing the same upon the delivering mechanism, and means arranged in front of the receiving means projecting toward and engaging parts of the bottle carrying flights for holding said parts relative to the ejecting mechanism and the transfer mechanism as the flights come to rest in front of the transfer mechanism."

Claim 10 appears to have been copied from a patent which had been granted to one John R. Dostal, and claims 11 and 12 were based on claims 3 and 4 of another Dostal patent. Appellants in presenting them sought an interference with Dostal. They were segregated from the other claims during the prosecution of the application and given independent consideration. The examiner rejected them in a decision rendered April 24, 1941, and his action was affirmed by the board in a decision rendered October 31, 1941. So, no interference was declared. It is unnecessary to discuss the grounds of such rejection at this point,

further than to say that references were cited as follows:

Herold et al., 2,022,201, November 26, 1935.

Ladewig et al., 2,124,423, July 19, 1938.

The Herold patent apparently was cited against claim 12 only.

The claims, although so rejected, were retained in the case pending final disposition in the Patent Office of the other claims, and are embraced in the appeal to us.

In the decisions of the respective tribunals of the Patent Office (that of the board being rendered June 19, 1943) upon the other claims (1, 2, 4 to 9, inclusive, and 13) the only reference cited is the Ladewig et al. patent, supra.

The grounds of rejection are well summarized in the brief of the Solicitor for the Patent Office as follows:

"Claims 1, 2, 4, 5, 6, 7, 8, 9, 11, 12 and 13 were rejected as unpatentable over the patent to Ladewig et al., No. 2,124,423, July 19, 1938.

"Claims 10, 11 and 12 were rejected on the ground that appellants' application will not support them. Claim 12 was also rejected as unpatentable over the patent to Herold et al., No. 2,022,201, November 26, 1935."

The brief on behalf of appellants states:

"The following questions are involved in this appeal:

"(1) Does the appellants' disclosure support appellants' claims?

"(2) Are the appellants' claims anticipated by the disclosure of the prior art references of record?

"(3) Are the appellants' claims distinguishable from the prior art only by functional statements?

"(4) Are the appellants' claims too broad?

"(5) Should the appellants delete from their specifications certain matter added to the specifications by amendments?"

These questions are covered by appropriate reasons of appeal, and each is argued at great length.

While the specification and drawings of the application disclose a somewhat complicated apparatus, the critical subject matter involved relates to the means by which the bottles (milk bottles are shown in the drawings) are unloaded at the end of the cleansing operation which takes place in other parts of the apparatus. In claim 1, supra, this means is described in the clause reading:

"* * * an ejector having a portion engageable with only one side of the mouth of a bottle in a bottle support in the conveyor to thereby eject said bottle from said support while simultaneously tilting said bottle toward the position of said receiver, said simultaneous tilting being caused at least in part by the contact of said ejector with said bottle on one side of the mouth of said bottle."

The idea so expressed is embraced in most of the other claims, the phraseology varying but having the same meaning.

The ejector element is described in the specification as a discharging plunger ("plunger" is hereinafter discussed), or lever having a bottle contacting or ejecting terminal portion. The lever is pivoted to and carried on a shaft. We quote the following (omitting numerals) from the decision of the board:

"The disclosure relates to mechanism for discharging bottles from bottle-washing machines. The bottles are mounted in a conveyor which carries them through the washing machine as is shown in Figs. 1 and 2. It is disclosed that by applicants' arrangement the bottles ejected from the washer conveyor at the discharging station will, upon tilting over, fall into separate stalls or partitions on the transfer table. The angle of the ejector or terminal portion of the ejector with respect to the mouth of the bottle to be ejected is such that only the lower margins of the beads of the bottles will be engaged by the terminal portion, that is, the terminal portion of the ejector arm does not flatly engage the end of the bead of the bottle and does not engage the bead at oppositely disposed points thereof as is said to be the conventional practice. It is disclosed that such one-sided engagement of the terminal portion of the ejector arm results in a movement of the bottle which tends to tilt the bottle toward a prone position, to which position the bottle will fall by gravity onto [a] table upon being completely ejected from the bottle pocket."

An inspection of the drawings of the Ladewig et al. patent reveals a bottle washing machine strikingly similar to that disclosed by the drawings of appellants, both in general arrangement and in many details. In the particular detail of un-

loading or discharging means—the ejector—Ladewig discloses a reciprocating plunger having a beveled and instead of a pivoted lever. In operation, as pointed out in the brief of the Solicitor for the Patent Office, "The beveled end of this plunger engages the lower portion of the bead on the bottle mouth in the final ejecting movement and the bottle falls by gravity onto the tiltable table 43. After the bottles are deposited on the table it is tilted to upright position and the bottles are placed on the conveyor 45."

The record does not disclose the arguments made on behalf of appellants before the tribunals of the Patent Office (there is no reason why it should do so), but it is fairly inferable from the decision of the board that the several material questions were fully argued before it, and we take the liberty of quoting literally rather than paraphrasing that portion of the board's decision which we deem most material relating to claims 1, 2, 4 to 9, inclusive, and 13:

"Taking claim 1, the examiner points out that it recites a structure fully anticipated by this reference and that it seems that the reliance for patentability rests on the clause explaining that the cause of the tilting which accompanies ejection is due at least in part to the ejector contact at one side of the bottle mouth. The examiner states that it is not seen how this language escapes the reference where the combined ejection and tilting function is due to action of the ejector which engages only one side of the bottle mouth as the ejection begins and is aided by gravity.

"Appellants argue that claim 1 sets forth the improved result of applicants' invention and that it is achieved by the use of an ejector having the end portion thereof so constructed as to engage only one side of the mouth of the bottle. It is argued that, as in Claim 1, all of the remaining claims similarly define the novel elements of applicant's invention. It is argued that there is not a single word in the Ladewig et al specification which indicates that these patentees secured or intended to secure a simultaneous tilting of the bottle while it was being ejected from the pocket onto the transfer table. It is argued further that if any result were secured by the inclined face of the ejector 39, as shown in this patent, it would be to prevent the tilting of the bottle until it had been ejected sufficiently far so as to assure passage of the large end of the bottle over the projection 69.

"It is apparent from the showing in the drawing of Fig. 3 of the patent that the end of the plunger 39 is spaced farther from the pocket in which the bottle is supposed to be carried at the bottom than at the top and apparently it would strike the upper edge or bead of the bottle in moving toward it. Of course, there is nothing particularly disclosed about the force of the blow in striking the bottle and there does not seem to be any such distinction in applicant's case. It is not apparent in applicants' disclosure that the ejector strikes the bottle before the conveyor starts on the downwardly inclined run and it is clear that it is on the downwardly inclined run when it is struck by the ejector in the reference so that any movement of the bottle on being struck in either case would apparently tend to release it for falling forward by reason of gravity. The distinction attempted to be set out here by functional limitations not supported by specific structure is considered not to be such as to render these claims allowable over the reference. The claims do not set out any specific structure of the ejecting mechanism that distinguishes over the structure of the ejecting mechanism of the reference and it is not apparent that the differences are such that it would render the claims patentable if the structure were so limited."

We have carefully considered the extensive arguments embraced in appellants' forty-three page brief, together with those made at the oral presentation before us, in the effort to show error in the above holding, but we are not convinced that there was error. To follow the arguments in detail and answer them in writing, one by one, could serve no useful public purpose.

We do not think there was any invention in substituting the pivoted lever ejector of appellants for the described ejector of Ladewig et al., and we agree with the board that the clearly functional limitations upon which appellants rely for differentiation do not render the claims allowable over the reference.

The foregoing applies to claims 11 and 12, as well as to claims 1, 2, 4 to 9, inclusive, and 13.

So, the above answers questions 2 and 3, and renders unnecessary the consideration of questions 4 and 5 (except as to claim

10) quoted above from appellants' brief as being involved in the appeal.

Question 1—"Does the appellants' disclosure support appellants' claims?"—applies only to claims 10, 11, and 12, which were rejected, as has been recited, in decisions rendered prior to and independently of the decision as to the other claims. As has been indicated, claims 11 and 12 were rejected in that prior decision on Ladewig et al., and also because of insufficient disclosure, claim 12 being additionally rejected on Herold et al.

In view of our conclusion that claims 11 and 12 were properly rejected on Ladewig et al., it is unnecessary to pass upon the other grounds, since, even if the decision were reversed as to those grounds, the claims could not be allowed, but our failure to discuss and pass upon them should not be taken as any indication that we regard the rejection on the other grounds erroneous.

■ With respect to the remaining claim 10, supra, the only claim which stands rejected upon the sole ground of lack of disclosure, we deem it proper to recite the following:

Claim 10 was copied verbatim from Dostal patent No. 2,191,227, issued February 20, 1940. (The patent itself does not appear in the record but is referred to in the decisions, and a copy is embraced in appellants' brief.) Appellants' application was filed April 25, 1940 (as a division of a copending application filed May 6, 1937), and, as we understand it, it did not then contain the word "plunger" in connection with its ejector which was defined as a lever. It does not appear from the record just when appellants copied the Dostal claim, but it does appear that on March 27, 1941, they sought to amend their specification by inserting the word "plunger" at two places therein where it would appear in connection with "lever." Apparently the amendment was permitted, but in the examiner's decision of February 20, 1942, relating primarily to claims 1, 2, 4 to 9, inclusive, and 13, but referring also to claims 10, 11, and 12, he stated that "the references to a 'plunger' should be cancelled." In appellants' appeal to the board it was alleged:

"6. The Examiner erred in requiring applicants to delete from the specification of the application involved in this appeal the reference to a 'plunger' made on page 5, lines 11 and 17 and page 6, line 27." [The line and page references are to the application as it stood in the Patent Office.]

The board made no reference to this matter in its decision, but appellants, evidently assuming that the requirement for deletion was covered by the board's general affirmance, alleged in its reasons of appeal to us that the board erred:

"9. In affirming the Examiner's requirement for deletion from the specification, page 5, lines 11 and 17, and page 6, line 27, of the references to the word 'plunger.'"

Obviously the foregoing proceedings constitute the basis of appellants' question 5 quoted, supra.

We find no direct argument in appellants' brief in support of the ninth reason of appeal above quoted, and it is not mentioned in the brief of the Solicitor for the Patent Office. It was the subject of some discussion during the oral argument before us, however, and it is asserted in the brief of the solicitor that, "Never before the issuance of the Dostal patent did appellants call their member 28 anything but a lever."

No copy of appellants' patent, reissue of which is sought, is included in the record before us. It is assumed that the specification of the reissue application, as originally filed, was a verbatim copy of the specification of the patent as issued, and it is clear from the record that the word "plunger" did not appear therein, but that it was inserted for the first time by the amendment of March 27, 1941, which the Examiner of Interferences held should be cancelled. It seems obvious that the amendment was proposed in the effort to provide a disclosure of "plungers" to enable appellants to support that feature as it appears in claims 10 and 11, inserted for the purpose of securing an interference with Dostal.

Appellants do argue at some length that undue importance has been attached to the plunger element. Their brief states, inter alia:

"* * * In the rejection of some of the appellants' claims, i.e., Claims 10 and 11 on the alleged basis that they were not supported by the disclosure, the Examiner and the Board of Appeals have improperly attached undue importance to the name of an element, i.e., plungers, which element entered into the claimed combination and which element, in itself, would not render the claim patentable or unpatentable in view of the fact that such elements, i.e., plungers, have been in use in bottle wash-

ers as bottle ejectors for many years, as clearly established by the prior art."

A number of authorities are then cited as supporting the contention—

"* * * That * * * undue importance should not be attached to the name of an element in determining * * * patentability. * * *."

We do not regard the authorities so cited applicable here.

Appellants' claim 10 (and the same may be said of claim 11) was put forward for interference purposes. There is no question of its patentability here involved, it being a patent claim. It was evidently considered by the tribunals of the Patent Office in the light of its purpose, and hence measured by the showing of the Dostal patent from which it was taken. The examiner stated, inter alia:

"But claim 10 includes as the only vitalizing feature on which its patentability was based, 'a plurality of plungers having their ends cut away at one side for projecting bottles from said sockets and causing them to tilt in one direction.' This language is held to be not properly applicable to applicants' ejecting mechanism.

"Dostal patent 2,191,227, where this language originated, shows true plungers 7 (Figs. 1, 2, 7) which reciprocate in guides 8 and have their ends 'cut away at one side,' or in other words, have stepped ends so that a vertical bottle will be contacted at only one side of its mouth and because of such unbalanced support will be caused to tilt in the desired direction.

"The distinction between a 'plunger' and a 'lever' in such contrasting typical cases as are here involved is clearly apparent. It may be impossible to write a perfect definition of either word; each may be used by various persons with varying degrees of error or aptness; and some imaginary structure might be conceived which might fall in the twilight zone between them. But such considerations do not offer any reason for refusing to recognize the sharp distinction which is actually present here, or for allowing a confusion of words and definitions to obliterate the sharp distinction between realities. The Dostal plunger does not have a fulcrum about which it may rock, it does not have a power arm to receive application of force to cause rocking, it does not have a load arm to move arcurately against a load.

"Dostal's distinctive type of ejector is aptly called a plunger; while applicant uses a lever, which is not a plunger, as his ejector. The structures are materially different."

It seems doubtful to us whether, even if it had been held that the amendment to the specification should not be deleted, an interference with Dostal would have been declared, but, however that may be, we are of the opinion that the amendment injected new matter into the reissue application and that the ruling of the examiner (impliedly approved by the board in its general affirmance) that such amendment "should be cancelled" was correct.

For the reasons indicated, the decision of the board affirming the examiner's rejection of all the claims is affirmed.

Affirmed.

### On Petition for Reconsideration.

The above decision was filed in the office of the clerk of the court on March 6, 1945, and copy of same was forwarded to counsel for appellants. In conformity with our practice copies were not distributed for printing pending expiration of the period within which, under our rules, petitions for rehearing, or reconsideration, may be filed.

On March 26, 1945, appellants filed a petition for reconsideration which has received our careful study.

Upon the merits of the case we find no reason to change our conclusion, but the petition directs attention to the fact that a mistake was made by us in referring to appellants' application as one for reissue of a patent.

The involved application, serial No. 331,586, filed April 25, 1940, is not for the reissue of a patent, but states in the specification that it is a division of a prior application, serial No. 141,084, filed by appellants May 6, 1937, which, so far as the record shows, is still pending in the Patent Office.

What we should have stated is that no copy of the prior, or parent, application was included in the record certified to us by the Patent Office. It is conceded that the term "plunger" did not appear in the here involved application as originally filed, and that it was inserted for the first time by an amendment of March 27, 1941, which subsequently was deleted as being

new matter. The only reasonable inference is that the term did not appear in the parent application else appellants would have made that application a part of the record.

It is greatly regretted, particularly by the writer of the opinion, that the mistake occurred, and the petition of appellants has been granted for the purpose of making the necessary correction in that regard. The matter, however, does not affect the merits of the controversy, nor are any other matters brought to our attention by the petition which lead us to feel that the conclusion originally reached was erroneous. Therefore, in so far as the petition may be regarded as one for rehearing, it is denied.